IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **SMDK CORP.,** | § | NO.   2:08-cv-00026-TJW |
| Plaintiff, | § | |
| vs. | § | |
| **CREATIVE LABS, INC., et al.,** | § | |
| Defendants. | § | |

**SEIKO EPSON, EPSON AMERICA, AND TIC'S JOINT MOTION
TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**PRELIMINARY STATEMENT**

Plaintiff SMDK Corp. makes or sells nothing. Its business is patent litigation. In a brazen example of forum shopping, SMDK, a Florida resident, filed suit in this District against a variety of defendants who all lack any connection to East Texas. To place this lawsuit in a more convenient forum, defendants Epson America, Inc. and Seiko Epson Corporation (collectively "Epson"), and TIC Computer, Inc. respectfully request a transfer of this action to the San Jose Division of the Northern District of California ("NDCA").

The Federal Circuit, in granting a petition for a writ of mandamus directing this District to transfer a case to the NDCA, recently reaffirmed that a "motion to transfer venue should be granted upon a showing that the transferee venue 'is clearly more convenient' than the venue chosen by the plaintiff." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). *See also In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("When the movant demonstrates that the transferee venue is clearly more convenient … it has shown good cause and the district court should therefore grant the transfer."). In *Genentech*, the Federal Circuit found that a court in this District had "clearly abused its discretion" in refusing to transfer a patent action to the NDCA where no parties or evidence were located in this District, both party and non-party witnesses were present in the NDCA, the NDCA had subpoena power over some witnesses located outside of the NDCA, and significant documentary evidence existed in the NDCA. *Id.* at 1348.

Applying *Genentech*, Judge Folsom just recently transferred a case involving both California and non-California defendants to the NDCA. *Balthasar Online, Inc. v. Network Solutions, LLC*, 2009 WL 2952230 (E.D. Tex. Sept. 15, 2009). Judge Folsom found the NDCA more convenient because "a substantial number of party and non-party witnesses reside in the NDCA and a substantial amount of the sources of proof are also located there, while very few witnesses and sources of proof, if any, reside in this District." *Id.* at *5.

For the same reasons that the Federal Circuit in *Genentech* and Judge Folsom in *Balthasar* found the NDCA to be "clearly more convenient" than this District, this Court also should transfer this action to the NDCA:

- Plaintiff SMDK, which is based in Florida, has no presence in this District.
- No defendants (which are based in Northern California, Southern California, Japan, Arkansas, Indiana and New York) have any presence in this District.
- Defendants Creative Labs, Inc. and Wal-Mart.com are based in the NDCA, and Defendants Epson America and TIC are located in adjacent Southern California.
- Several non-party witnesses identified by the parties in their Initial Disclosures (including key witnesses with knowledge of Defendants' invalidity defense) reside in the NDCA, and several others are substantially closer to the NDCA than this District. No non-party witnesses reside anywhere near this District.
- No acts relating to the alleged infringement of SMDK's patents occurred in Texas.

If this Court does not transfer this case to the NDCA, which, unlike this District, would have subpoena power over several non-party witnesses, the defendants likely will be forced to present their case by videotaped deposition testimony—something the courts have recognized as a "sterile, inadequate substitute for live testimony on key issues" in patent cases. *Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 610 (E.D. La. 2000).

Now is an apt time for the Court to consider this motion. The parties served their Paragraph 1 Initial Disclosures on September 28 and therein identified, for the first time, likely party and non-party witnesses. Before September 28, the Court could not have engaged in an informed analysis of the

relative convenience of the NDCA and this District for likely trial witnesses. Then on October 8, the Defendants served their invalidity contentions, which identified several third parties with key prior art, none of whom are in Texas. (*See* Park Decl. ¶ 11, Ex. I.) Also, the parties are just now starting the claim construction process—having exchanged proposed terms for construction on October 12. To date, this Court has not addressed any substantive issues. Thus, this Court can smoothly transfer this action to the NDCA at this time.

For all these reasons, which Movants discuss more fully below, Movants respectfully request that the Court grant this motion to transfer venue.

## I.    THIS LAWSUIT HAS NO CONNECTION TO TEXAS.

SMDK is a Florida corporation with its principal place of business in Bonita Springs, Florida. On January 25, 2008, SMDK filed suit in this District, accusing Movants and the other defendants of infringing U.S. Patent Nos. 6,658,202 and 6,987,927, which purport to claim inventions for portable data transfer and mass storage devices.

This lawsuit is SMDK's sole business. According to 2008 financial statements accessible at www.SMDK.com, SMDK had $0 in product sales in 2008, had $0 in licensing fees and royalties during 2008, and spent $0 on research and development and marketing in 2008.

Defendant Seiko Epson makes and markets a wide variety of consumer electronics products throughout the world. Defendant Epson America is a subsidiary of Seiko Epson, and markets, distributes and sells Seiko Epson products in the United States. (Day Decl. ¶¶ 3, 4, 6.) SMDK has accused Epson's Multimedia Photo Viewers of infringing its asserted patents. Seiko Epson designed and developed the Photo Viewers in Japan. (Day Decl. ¶ 7.)

SMDK surely chose this forum because of its popular reputation as a "plaintiff-friendly" "rocket docket." (*See, e.g.*, www.technologytransfertactics.com/content/2009/01/14.) Indeed, there can be no other reason, for no party has any connection with the Eastern District of Texas:

| PARTY | STATE OF ORIGIN | PRINCIPAL PLACE OF BUSINESS | OFFICES IN TEXAS |
|---|---|---|---|
| SMDK Corp. | Delaware | Bonita Springs, Florida | None |
| Epson America, Inc. | California | Long Beach, California | None |

| PARTY | STATE OF ORIGIN | PRINCIPAL PLACE OF BUSINESS | OFFICES IN TEXAS |
|---|---|---|---|
| Seiko Epson Corporation | Japan | Nagano, Japan | None |
| Creative Labs, Inc. | California | Milpitas, California | None |
| TIC Computer, Inc. | California | Irvine, California | None |
| Thomson, Inc. | Delaware | Indianapolis, Indiana | None |
| Audiovox Corp. | Delaware | Hauppauge, New York | None |
| Wal-Mart Stores, Inc. | Delaware | Bentonville, Arkansas | None |
| Wal-Mart.com USA, LLC | California | Brisbane, California | None |

II. **PRIOR WORK DONE BY SEVERAL CALIFORNIA COMPANIES RENDERS THE CLAIMED INVENTIONS INVALID.**

SMDK's asserted patents are invalid, and evidence subject to the subpoena power of the NDCA (and not subject to the subpoena power of this District) will help Movants and their co-defendants prove invalidity.

The devices described in SMDK's '202 and '927 patents store a large number of digital photographs on a hard disk. The patents claim a combination of well-known, conventional computing components. According to the '202 specification:

- The invention contemplates that digital photographs will be stored on a hard drive—which "is preferably a ***well-known***, 2.5 inch ***commercially-available*** hard disk drive." ('202 Patent at 3:53-56, Ex. J; emphasis added.)

- The claimed inventions involve transferring photographs to the hard drive through "***conventional*** PCMCIA ports" that are "designed to receive the ***commercially available*** Toshiba SmartMedia flash memory module standard." ('202 Patent at *e.g.* 2:28-31 & 4:17-19, Ex. J; emphasis added.).

- Once the photographs are stored on the hard drive, a user can download stored photographs to a PC through "a wide range of I/O ports including… a Universal Serial Bus (USB), a parallel port, and a high speed serial port… or any desired subset of these or ***other known ports***." ('202 Patent at 3:46-51, Ex. J; emphasis added.)

Given that the claimed inventions utilize pre-existing component parts, the only purportedly inventive thing about the devices disclosed in the patents is the way in which the inventors arranged the

components. However, the inventors did not discover anything new.

The Defendants have identified numerous potential witnesses based in California, including witnesses that reside within the NDCA's Silicon Valley, that have worked on computer-based consumer electronics products such as the ones described in the asserted patents. Indeed, these companies developed essentially the same technology disclosed in SMDK's asserted patents long before the September 1998 priority date for those patents. For example:

- People working for Apple, Inc. in Cupertino, California, began work on the "Newton" handheld computer in 1989. Apple released the first generation of Newton products in 1993. As early as 1994, Apple planned to link its digital camera product, the QuickTake 100, with the Newton "for storing images on Newton PCMCIA cards or transmitting them using the PDA and a modem." (Park Decl. Ex. K.) The Apple Newton  references cited in Defendants' Preliminary Infringement Conventions reveal that as early as 1997, a mountaineering expedition in Tibet used the Apple Newton as a portable digital photograph repository. These users could transfer images from a digital camera to the Newton via a cable and later upload the images to a host computer. (*See* Ex. I at 11-12 & Chart A-9.)[1]

- People working at Toshiba America Information Systems, Inc. in Irvine, California, developed the Libretto 50CT sub-notebook computer. Toshiba described the Libretto as fitting comfortably "in the palm of a user's hand," as required by the asserted patent claims. Toshiba released the Libretto for worldwide distribution on June 3, 1997, 

---

[1] Unless otherwise indicated, all exhibits are attached to the declaration of Patrick Park, which Epson is filing in support of this motion.

more than a year before the alleged priority date of SMDK's asserted patents. One of the Libretto references cited in Defendants' PICs explicitly discloses how to use the Libretto as a portable digital photograph repository that would enable a user to transfer digital pictures from a camera's memory to the Libretto and later upload the images to a host computer. (*See* Ex. I at 10-11 & Chart A-8.)

- People working for Iomega Corporation in San Diego,[2] California, developed the "Clik! Drive for Digital Cameras." The Clik! Drive was available at least as early as June 1998. This device weighed less than six ounces, was just over 4.5 inches long, and enabled a user to store pictures from his or her digital camera, and later transfer the stored images to a desktop computer. (*See* Ex. I at 7-8 & Chart A-5.)

- People working for MGVision, which was based in Irvine, CA, developed the "Digital Wallet." MGVision made this product available as early as January 1998. Like the Iomega Clik! Drive, MGVision specifically designed the Digital Wallet to store images from a digital camera when the camera's memory filled up. The Digital Wallet was about the same size and shape as an ordinary wallet and boasted a gigabyte of memory. Users could connect the Digital Wallet to 95 percent of digital cameras available at the time. (*See* Ex. I at 8-9 & Chart A-6.)

This (and other) prior art will provide Defendants with a compelling invalidity defense. The information (both documentary and testimonial) possessed by Toshiba, Apple, Iomega, MGVision and other California residents will be critical validity evidence. This evidence is located either in the NDCA, or within the subpoena power of the NDCA.

## III. LEGAL STANDARDS FOR TRANSFER MOTIONS.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Fifth Circuit recently articulated the standard a party must meet in order to prevail on a

---

[2] http://go.iomega.com/en-us/info/about-iomega/?partner=4760.

motion to transfer:

> "As to the appropriate standard, in *Humble Oil* we noted that 'the avoidance of dismissal through § 1404(a) lessens the weight to be given' the plaintiff's choice of venue and that, consequently, 'he who seeks the transfer must show good cause. ... This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled. When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.' Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer."

*In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Similarly, the Federal Circuit has directed that a "motion to transfer venue should be granted upon a showing that the transferee venue is **clearly more convenient** than the venue chosen by the plaintiff." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (emphasis added).

To determine whether a proposed transferee forum is "clearly more convenient" than the plaintiff's chosen forum, the Court must analyze the same private and public interest factors that drive a *forum non conveniens* analysis. *In re Volkswagen*, 545 F.3d at 315. These private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial of a case easy, expeditious and inexpensive. *Id.* And the public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *In re Volkswagen*, 545 F.3d at 315.

## IV. SMDK COULD HAVE BROUGHT THIS ACTION IN THE NDCA.

Before a court can transfer a case to another district, it must find that the plaintiff could have originally brought the case in the proposed transferee forum. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("The preliminary question under § 1404(a) is whether a civil action might have been brought in the destination venue.").

SMDK could have properly filed this action in the NDCA. Pursuant to 28 U.S.C. § 1400(b), a

party may bring a patent infringement action in any "district where the defendant resides." Under Section 1400(b), this Court can consider all the defendants to be NDCA residents for purposes of determining proper venue because they have sold products in the NDCA or otherwise were subject to personal jurisdiction in the NDCA at the time SMDK initiated this action. 28 U.S.C. § 1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.").

## V. GOOD CAUSE EXISTS TO TRANSFER THIS ACTION TO THE NDCA BECAUSE THE NDCA WOULD BE CLEARLY MORE CONVENIENT.

### A. The NDCA Is A "Clearly More Convenient" Forum For Witnesses.

The Federal Circuit noted in *Genentech* that perhaps the most "important factor" in analyzing a transfer request is the "convenience for and cost of attendance of witnesses." *In re Genentech*, 566 F.3d at 1343 (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in transfer analysis").). In this regard, "the convenience of the nonparty witnesses is accorded the greatest weight." *See also Mini Melts, Inc. v. Uniworld Corp.* 2008 WL 4441979, *4 (E.D. Tex. September 25, 2008).

The Fifth Circuit follows the "100-mile" rule, which states that when "the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204-5 (5th Cir. 2004). Furthermore, in cases where potential witnesses are from widely scattered locations, a trial court should not consider its "central location" if no witnesses reside within the plaintiff's choice of venue. *Genentech*, 566 F.3d at 1343-44.

In *Genentech*, the Federal Circuit also rejected the notion that a district court can only justify a transfer order if it finds that "*key* witnesses" reside within the proposed transferee venue. *In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). The Federal Circuit in *Genentech* also rejected the concept that, for a district court to transfer a case, it must find that the transferee venue would be more convenient for ***all*** witnesses. *Id.* at 1345. The court ruled that not even a majority of witnesses has to reside in a

transferee venue for a court to find that venue to be more convenient. Instead, the court stated that if a substantial number of identified witnesses reside in the transferee venue, and no witnesses reside in the present venue, this factor weighs substantially in favor of transfer. *Id.* ("Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer.").

Under the decision rules articulated in *Volkswagen* and *Genentech*, the NDCA would be "clearly more convenient" for both non-party and party witnesses.

### 1. The NDCA is "clearly more convenient" for non-party witnesses.

In their Paragraph One Initial Disclosures, the parties collectively identified 39 non-party witnesses. Not one of these witnesses resides in the Eastern District of Texas, or even anywhere near this District. In contrast, numerous non-party witnesses reside in the NDCA, including:

- *Apple Computer*, identified by Epson as a non-party with knowledge about invalidating prior art, is located in Cupertino, California. (*See* Ex. G at 5.)
- *Eran Steinberg*, identified by defendants Epson and Thomson as a witness with knowledge about invalidating prior art, lives in San Francisco. (*See* Ex. G at 5; Ex. D at 8.)
- *Fotonation, Inc.*, identified by Epson as a non-party that has knowledge about invalidating prior art, is located in San Francisco. (*See* Ex. G at 5.)
- *Yury Prilutsky*, identified by Thomson as a witness with knowledge about invalidating prior art, lives in San Mateo, California. (*See* Ex. D at 8.)
- *Scott Rafer*, identified by Thomson as a witness with knowledge about invalidating prior art, lives in San Francisco. (*See* Ex. D at 8.)

Other important non-party witnesses are based in Southern California, including ***Toshiba America*** (Irvine), ***MGVision*** (Irvine) and ***Iomega*** (San Diego). These entities are just a short plane trip from the NDCA. (*See, supra,* Section II.)

Defendant Thomson identified seven Japanese witnesses with knowledge about invalidating

prior art—Toshiba, Sony Corp., Nobuyuki Kihara, Teppei Yokata, Urato Aruga, Kazuki Itoh, and Chinon Kabushiki. (*See* Ex. D at 8, 9.) For these witnesses, a trip across the Pacific to the NDCA is clearly more convenient than a trip to Texas. Indeed, a typical plane flight from Narita Airport in Japan to San Jose takes approximately 12 hours, whereas flying to Marshall, Texas from Japan will consume approximately 14.5 hours.

For the remaining non-party witnesses, who variously reside in Western Europe, Colorado, Florida, Indiana, New Hampshire, New York, North Carolina, and Virginia, the NDCA is either a slightly more convenient forum than the Eastern District of Texas, or approximately just as convenient. (*See* Exhibit 1, attached hereto, for a table detailing the convenience considerations for all of the identified non-party witnesses.)

### 2.     The NDCA is "clearly more convenient" for party witnesses.

No party has a base in the Eastern District of Texas. Two defendants—Creative Labs and Wal-Mart.com—reside in the NDCA. Two additional defendants—Epson America and TIC—are adjacent to the NDCA in Southern California.

None of the individual party witnesses identified in the Initial Disclosures reside anywhere near the Eastern District of Texas. In contrast, several party witnesses reside in the NDCA, or a short plane trip away in Southern California:

- ***Naoki Asano*** is a Seiko Epson employee that works in San Jose. Mr. Asano has knowledge regarding Seiko Epson and Epson America's early discussions with SMDK. (*See* Ex. G at 6.)
- Creative identified ***Robert Gilsdorf*** and ***Steve Erickson***, both of Menlo Park, as witnesses with knowledge about Creative's accused products. (*See* Ex. B at 6.)
- Wal-Mart Stores and Wal-Mart.com identified ***Uyen Do*** and ***Cindy Tse***, both of Brisbane, California, as witnesses with knowledge about Walmart's accused products. (*See* Ex. E at 4.)
- TIC identified ***Moataz Mardinia*** and ***S.C. Wang***, both of Irvine, California, as witnesses with knowledge about TIC's accused products. (*See* Ex. F at 4.)

- Epson America identified **Richard Day** of Long Beach, California, as a person with knowledge about marketing and sales of Seiko Epson and Epson America's accused products. (*See* Ex. G at 6.)
- Epson America identified **Sira Arabian** and **Kathy Mester** of Long Beach as persons with knowledge about Seiko Epson and Epson America's accused products. (*See* Ex. G at 6.)
- Epson America identified **Yuichi Takeuchi** of Long Beach as a Seiko Epson employee presently assigned to Epson America that has knowledge about Seiko Epson and Epson America's accused products. (*See* Ex. G at 5.)

Seiko Epson's headquarters are in Nagano Japan. As previously discussed, the NDCA is clearly more convenient than the Eastern District of Texas for people coming from Japan.

The other individual witnesses identified by the parties are located in Florida, Indiana, and New Jersey. These party witnesses would find the NDCA to be approximately as convenient as the Eastern District of Texas. (*See* Exhibit 2, attached hereto, for a table detailing the convenience considerations for all of the party witnesses.)

In sum, if SMDK's choice of forum holds, every named party and every disclosed witness will have to travel a substantial distance to attend trial or other proceedings. (Park Decl. ¶¶ 14-16.) This Court can eliminate or significantly reduce the burden for a substantial number of witnesses by transferring this case to the NDCA. *See In re Genentech*, 566 F.3d at 1343; *Balthasar Online, Inc.*, Civil Action No. 2:09-CV-430 at 9 (Judge Folsom transferred case to NDCA, even though some defendants resided elsewhere, because substantial number of party and non-party witnesses and sources of proof were located in the NDCA, and no non-California defendants resided in Texas); *Mini Melts, Inc.*, 2008 WL 4441979 at *4; *Two-Way Media, LLC v. AT&T, Inc.*, 2009 WL 1606972 at *9 (S.D. Tex. June 8, 2009).

**B.   Documentary Evidence Will Be Easier To Access In The NDCA.**

The Federal Circuit stated in *Genentech*: "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345 (it is

- 11 -

error to "minimize[] the inconvenience of requiring the petitioners to transfer their documents" from a convenient forum to an inconvenient one).

This consideration weighs heavily in favor of transferring this case to the NDCA:

- Because defendant Creative Labs is a resident of the NDCA, all of its relevant documents are located in the NDCA. (Park Decl. ¶ 10.)

- Defendant Wal-Mart.com is a resident of the NDCA. Moreover, SMDK is accusing Wal-Mart, Inc. and Wal-Mart.com of infringement because they sell two products made by Creative Labs. (*See, e.g.,* Park Decl. ¶ 9, Ex. H at 1, 7.) Thus, all documents relevant to the Wal-Mart entities' accused products are located in the NDCA. (Park Decl. ¶¶ 9, 10.)

- Most of the documents relevant to the defense of Seiko Epson and Epson America are located in Long Beach, California. Other documents relevant to their defense are located in Japan. (Park Decl. ¶ 10.) In light of these locations, the NDCA is clearly more convenient than the Eastern District of Texas.

- Most of the documents relating to TIC's defense are located in Irvine, California. Other relevant documents are located in Taiwan. (TIC Decl. at ¶ 7.) In light of these locations, the NDCA is clearly more convenient than the Eastern District of Texas.

- Documents possessed by the other defendants are located a significant distance away from both the NDCA and the Eastern District of Texas (*e.g.,* Indiana, New Jersey, and New York). (Park Decl. ¶ 10.) For these defendants, the NDCA would be at least as convenient, if not more convenient, than this District.

Given these facts, the NDCA is clearly a more convenient forum. *See, e.g., In re Genentech*, 566 F.3d at 1345; *TS Tech*, 551 F.3d at 1321 ("Because all of the physical evidence, including the headrests and the documentary evidence, are far more conveniently located near the Ohio venue, the district court erred in not weighing this factor in favor of transfer.").

### C. The Prospect Of Live Testimony Rather Than "Sterile, Inadequate" Videotaped Deposition Testimony Favors Transfer.

As the Federal Circuit explained in *Genentech*, witness location impacts more than the issue of

convenience; it also impacts a party's ability to secure the attendance of witnesses at trial. *In re Genentech*, 566 F.3d at 1345. The U.S. Supreme Court has recognized that "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 511 (1947). *See also Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 144 (E.D. Tex. 1992) ("conducting a substantial portion of a trial on deposition testimony precludes the trier of fact from its most important role: evaluating the credibility of the witnesses"). The availability of live testimony is especially important in patent cases:

> [I]n an unusually technical case such as this one, it is more than just important that the jury see and hear the live testimony of material witnesses. ***It is essential to the cause of justice itself. Deposition testimony, which would be the only vehicle ... to present the testimony of these witnesses if the action were not transferred..., is a sterile, inadequate substitute for live testimony on key issues.*** As such, the court finds that not only substantial inconvenience, but substantial injustice would result if [Defendant] were unable to present live testimony to educate the jury.

*Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 610 (E.D. La. 2000) (emphasis added). *See also In re Volkswagen*, 545 F.3d at 316 (weighing this factor in favor of transfer to the Dallas Division because that division "enjoy[s] *absolute* subpoena power for depositions and trial."); *Penntube Plastics Co. v. Fluorotex, Inc.*, 336 F. Supp. 698, 706 (D.C.S.C. 1971) (the "importance of having live testimony of such witnesses has been recognized in this Circuit as a compelling reason for transferring, particularly in patent cases").

The NDCA has "absolute subpoena power" over third party witnesses residing anywhere in California. Cal. Civ. Proc. Code § 1989 (providing that witnesses are obliged to attend a proceeding "before any court, judge, justice or any other officer" if he or she is "a resident within the state"). Thus, under Rule 45(b)(2), Defendants could compel any witness that resides in California to appear at a trial in the NDCA, including witnesses who work for Apple, Toshiba, Iomega, and MGVision. *See Morris v. Safeco Ins. Co.*, 2008 WL 5273719, *5 (N.D. Cal. Dec. 19, 2008) ("The Eastern District's subpoena power extends throughout the state of California pursuant to Rule 45 of the Federal Rules of Civil Procedure, which provides that a subpoena may be served anywhere within the state of the issuing court if a state statute allows state-wide service of a subpoena issued by a state court of general jurisdiction…

Section 1989 of the California Code of Civil Procedure authorizes such state-wide service.").

As previously discussed, Defendants anticipate that live non-party witness testimony will benefit their defense. Because the NDCA affords Defendants the ability to compel all of the aforementioned third party witnesses to appear for trial, and the Eastern District of Texas does not provide Defendants with a comparative subpoena power, this factor strongly favors transfer to the NDCA. *See In re Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

### D. Public Interest Factors Favor The Transfer Of This Case To The NDCA.

#### 1. The NDCA has a greater local interest in this action.

The mere fact that Defendants might have sold accused products in this District does not confer upon the citizens of this District any special or unique localized interest in the matter. *In re TS Tech*, 551 F.3d at 1321 ("Here, [the accused products] were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue."); *In re Volkswagen*, 545 F.3d at 318 (rejecting rationale that citizens of Marshall, Texas have interest in product liability case because some products may have been sold in district because it "stretches logic in a manner that eviscerates the public interest that this factor attempts to capture" and "leaves no room for consideration of those actually affected ... by the controversies and events giving rise to a case.").

In contrast, citizens of the NDCA have a substantial interest in this case. Two parties, Creative and Wal-Mart.com, are based in the NDCA, as are many important non-party witnesses. (*See, supra,* Section V.A.) Thus, "the local interest factor here weighs in favor of transfer." *In re Genentech*, 566 F.3d at 1348.

#### 2. Considerations of judicial economy do not weigh against transfer.

Epson appreciates that four years ago, in *SmartDisk Corp. v. Archos S.A. et al.*, 2:05-cv-00101-TJW ("*Archos* Litigation"), this Court handled a case involving the same patents that SMDK is now asserting. This Court's experience with the *Archos* Litigation, which the parties resolved by settlement, should not weigh strongly against a transfer of this action to the NDCA.

First, it is questionable whether this Court's prior experience—several years ago—with the asserted patents will result in any significant conservation of judicial resources *in this action*. Because this case involves different parties, different prior art and different accused products, there will be little overlap between the *Archos* Litigation and this action. *See, e.g., J2 Global Comms., Inc.*, 2009 WL 440525 at *6 (E.D. Tex. Feb. 20, 2009) ("a prior claim construction opinion is just one factor which may help determine the amount of overlap between cases.").

Second, the fact that this Court has prior experience with the asserted patents does not overwhelm the above-cited factors heavily favoring transfer to the NDCA. While the Federal Circuit has recognized that when all other relevant factors are "in equipoise," considerations of judicial economy may tip the scales against transfer, such is not the case here—the other relevant factors heavily favor transfer. *See Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). *See also Two-Way Media, LLC v. AT&T Inc.*, 2009 WL 1606972, at *15 (court's prior experience with lawsuit did not outweigh § 1404(a) factors; court remarked that "Defendants should not have to defend this case in Corpus Christi *only* because a *different* defendant, who was accused of making a *different* infringing product and sued in a *different* case, did not then complain about venue. Such would not serve the interests of justice.").

## CONCLUSION

This Court should not give SMDK's forum shopping any deference. Because the NDCA is a "clearly more convenient" forum for this lawsuit, Movants respectfully requests that this Court grant their motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

DATED: October 22, 2009.                                      Respectfully Submitted,

/s/ Tom Henson
Tom Henson
Lead Attorney
TX State Bar No. 09494000
**RAMEY & FLOCK, P.C.**
100 East Ferguson, Suite 500
Tyler, TX 75702
Tel.: (903) 597-3301
Fax: (903) 597-2413
thenson@rameyflock.com

*Of Counsel:*
Richard de Bodo
Patrick Park
HOGAN & HARTSON, LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 785-4600
Fax: (310) 785-4601
rdebodo@hhlaw.com
ppark@hhlaw.com

*Attorneys for SEIKO EPSON CORPORATION
and EPSON AMERICA, INC.*

## LOCAL RULE CV-7(i) CERTIFICATE OF CONFERENCE

I, hereby certify that, on information and belief, Patrick Park of Hogan & Hartson LLP, national patent counsel for defendants Seiko Epson Corporation and Epson America, Inc., in compliance with Local Rule CV-7(h), conferred on behalf of Movants with David Hill, counsel of record in this action for plaintiff SMDK. During this October 20, 2009 call, Mr. Hill and Mr. Park discussed the grounds for the instant Motion To Transfer. Mr. Hill indicated that SMDK disagrees with those grounds and intends to oppose the motion. The conference between Mr. Park and Mr. Hill conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ Tom Henson
Tom Henson

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Tom Henson
Tom Henson