IN THE UNITED STATES DISTRICT COURT
FOR THE EASTER DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **SMDK CORP.,** § | NO. | 2:08-cv-00026-TJW |
| §  **Plaintiff,** § | | |
| vs. § | | |
| **CREATIVE LABS, INC., et al.,** § | | |
| §  **Defendants.** § | | |

### SEIKO EPSON'S, EPSON AMERICA'S, CREATIVE'S AND TIC'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

### PRELIMINARY STATEMENT

Defendants demonstrated in their moving papers that witnesses would travel fewer miles, incur less expense, and be more likely to attend trial if this Court transfers this action to the Northern District of California. In doing so, defendants satisfied the "clearly more convenient" test for transfer motions set forth in *In re Genentech*, 566 F.3d 1338, 1344-45 (Fed. Cir. 2009). SMDK's opposition does nothing to undermine defendants' factual or legal support for transfer.

In its effort to preserve venue in a District that is in no way connected to any party or any acts giving rise to this lawsuit, SMDK ignores key facts and mischaracterizes others. SMDK's most serious misrepresentation is its assertion that a "majority of the parties—Plaintiff and 4 of the 8 defendants—favor the current jurisdiction." (SMDK Opp. at 1.) This is not true. *Every defendant* has consented to the transfer of this case to the NDCA, either by formally joining in the motion, or by filing a joinder, or by indicating it does not oppose a transfer. (10/22/09 Park Decl. ¶ 17.) No substantive difference exists between a party affirmatively joining in a motion for transfer or agreeing not to oppose it. The fact that not all defendants have formally joined in this Motion has no bearing on the convenience analysis and is no reason to deny transfer. *Balthasar Online, Inc. v. Network Solutions, LLC, et al.*, No. 2:08-cv-430-DF, 2009 WL 2952230 at *5 (E.D. Tex. Sept. 15, 2009) (granting motion to transfer made by California defendants based on the convenience factors set forth in *Genentech*, even though some defendants did not formally join the motion to transfer, and simply indicated that they did not oppose the motion). The only party opposing transfer in this case is SMDK. And SMDK does not oppose transfer out of altruistic concerns for the convenience of

witnesses, but for tactical reasons. That, of course, is no reason to keep the suit in Eastern Texas.

SMDK also mischaracterizes the facts in arguing that Defendants should have requested a transfer at an earlier time. (SMDK Opp. at 1, 3.) Contrary to SMDK's insinuations (SMDK Opp. at 1), Defendants have not burdened the resources of this Court. Indeed, Defendants have made no motions or engaged in any other activity that would "consume the resources of this Court." In truth, it is SMDK itself that has delayed the progress of this case by twice seeking extensions of time to serve defendants (*see* Docket Nos. 37 and 48), and by failing to serve the last defendant until December 25, 2008. (Docket No. 110.) Because of these delays, the Court did not hold a status conference until July 28, 2009, and did not issue a scheduling order until August 14, 2009. (*See* Docket Nos. 129 & 130.) In its Scheduling Order, the Court directed the parties to serve their Paragraph 1 Initial Disclosures on September 28, 2009—just a few weeks ago. Because transfer motions typically turn on witness convenience considerations, it would have been a wasteful consumption of the Court's time if Defendants had filed this motion before the service of Initial Disclosures. (Motion at 2.) Given the history of this case, it is apparent that Defendants brought this motion at the earliest reasonable opportunity, and that now is a ripe time to transfer this action.

Contrary to what SMDK argues, Defendants are unanimous in wanting this Court to transfer this action to the NDCA, and Defendants have acted responsibly in connection with the timing of this Motion. As for the substantive issues, Defendants respectfully submit—as more fully explained in their moving papers and in the brief rebuttal points below—that they have shown "good cause" for the granting of this Motion. Accordingly, Defendants request that the Court transfer this action to the NDCA.

## I. DEFENDANTS HAVE ESTABLISHED THAT THE NDCA IS A "CLEARLY MORE CONVENIENT" FORUM, AND THEREFORE SATISFIES THE STANDARD FOR TRANSFER.

### A. Defendants Have Established That The NDCA Would Be Clearly More Convenient For Both Non-Party And Party Witnesses.

As Defendants noted in their opening papers, the Federal Circuit in *Genentech* stated that the most "important factor" in analyzing a transfer request is the "convenience for and cost of attendance of witnesses," and that courts in this District have determined that "the convenience of the nonparty witnesses is accorded the greatest weight." (Motion at 8.) Defendants, armed with specific data relating to the convenience factors for each identified witness, then explained how the NDCA would be substantially more convenient for non-party witnesses because five of those witnesses reside in the NDCA, several more reside in nearby Southern California, and seven reside in Japan (which is significantly closer to Northern California

than Eastern Texas). (Motion at 9-10 & Ex. 1.) Defendants also detailed how a transfer would benefit the parties, given that two defendants reside within the NDCA, two are located in adjacent Southern California, none reside within this District, and several individual party witnesses reside in the NDCA or are just a short plane trip away. (Motion at 10-11 & Ex. 2.) Defendants also demonstrated that much of the relevant documentary evidence exists in the NDCA and Southern California. (Motion at 11-12.)

SMDK did not contest Defendants' analysis and arguments for transfer. Instead, SMDK generally argued that the action should remain in this District because "Texas sits in the middle of the country." (SMDK Opp. at 2, 8.) The Federal Circuit, however, rejected SMDK's simplistic (and unsupported) analytical approach in *Genentech*. *In re Genentech*, 566 F.3d 1338, 1344-45 (Fed. Cir. 2009) (criticizing the use of a "central locality approach" in situation where no witnesses resided within the District and some witnesses did reside within proposed transferee forum). Courts in this District have followed *Genentech*'s guidance on this point. *See, e.g., Novartis Vaccines and Diagnostics, Inc. v. Bayer Healthcare LLC*, Case No. 2:08-cv-00068-TJW, Docket No. 98 at 5-6 (E.D. Tex. Sept. 28, 2009) ("Plaintiffs also urge the Court to find that the Eastern District of Texas is a central location. Neither party has identified any witnesses within the Eastern District of Texas. Therefore, the centrality of the Court's location is irrelevant to the analysis in this case, in light of *In re Genentench*.").

### B. The NDCA Provides Greater Access To Proof Through A More Effective Subpoena Power.

In their moving papers, Defendants explained how a transfer to the NDCA would allow them to present live witnesses rather than "sterile, inadequate" videotaped deposition testimony because numerous witnesses would be subject to the NDCA's subpoena power, whereas none are subject to the subpoena power of this District. (Motion at 12-13.) SMDK tried to minimize this consideration by arguing that Defendants could introduce evidence about prior art through their experts. (SMDK Opp. at 2.) In the typical patent case, the lack of any legal power to compel the attendance of fact witnesses often forces litigants to offer evidence exclusively through expert testimony. This is not ideal. As the U.S. Supreme Court and other courts have repeatedly stated, live testimony from a primary witness is superior to an offer of deposition testimony or an expert's summation of the testimony. (Motion at 13.) Hence, the greater potential for live witness testimony in the NDCA strongly favors transfer.

SMDK asserts that Defendants "overlook[ed] the fact" that Offie Drennan resides in Austin, Texas. (SMDK Opp. at 9.) Defendants did not overlook anything. SMDK's Initial Disclosures, served on

September 28, stated that Mr. Drennan resides in Naples, Florida. It is curious that Mr. Drennan's address suddenly changed after Defendants filed their Motion. In any event, the number of witnesses that would be subject to the NDCA's subpoena power far exceeds the single person who might be subject to this District's subpoena power.

## II. JUDICIAL ECONOMY CONSIDERATIONS DO NOT WEIGH AGAINST TRANSFER.

SMDK argues that this action should remain in this District because of the District's previous experience with the *Archos* litigation. (SMDK Opp. at 3, 4-5, 10-11.) For several reasons, this fact does not weigh against transfer.

### A. This Court Has No Experience With The Asserted Patents.

SMDK argues that it would be a waste for this District not to use the knowledge it purportedly gained about the asserted patents by sending this action to the NDCA. SMDK, however, bases this argument on the premise that ***this Court*** is knowledgeable about the patents due to the prosecution of the prior *Archos* Action within this District. This is a false premise. The only judge in this District that had any experience with the asserted patents—Judge Ward—recused himself and therefore cannot participate in this case. The law clerks that worked for Judge Ward during *Archos* have moved on to other pursuits. This Court has no prior experience with the asserted patents, the cited prior art, or the accused products. Indeed, this Court has no more experience with the issues presented by this case than any judge in the NDCA would have. Consequently, no judicial economies exist that would justify keeping this action in this District.[1]

### B. This Case Differs From The *Archos* Action.

This case is not a repeat of *Archos*. In their invalidity contentions in this action, Defendants asserted *14* prior art references. (Ex. I to the 10/22/09 Park Decl.) The defendants in *Archos* only asserted *five* of these references. Indeed, Defendants discussed several critical pieces of prior art in their Motion (*see* Motion at 5-6), like the Iomega Clik! Drive, the MGVision Digital Wallet, and the Apple Newton, that the *Archos* defendants ***did not*** previously put "before the Eastern District of Texas." And because companies in California designed, made and sold these prior art products, the NDCA is the judicial district best situated to receive evidence regarding these references.

---

[1] The only substantive ruling that Judge Ward issued in *Archos* dealt with claim construction—a ruling that the NDCA can take into consideration if this Court transfers this case to that District. (SMDK has no authority to support its assertion that this District has a special interest in ensuring that a court appropriately considers rulings from a prior case litigated within the District.)

Furthermore, it is an overstatement for SMDK to contend that the five references that are common to this suit and *Archos* actually were "before the Eastern District of Texas." (SMDK Opp. at 4.) Nothing in the document history of *Archos* indicates that Judge Ward scrutinized any of the defendants' asserted prior art references. The docket reflects the defendants' service of preliminary invalidity contentions. (*See* Docket Nos. 31, 70.) However, the case history does not indicate that any party ever put before Judge Ward any of the references cited in those contentions. For example, no party made any kind of substantive motion, such as a motion for summary judgment, relating to validity issues.

In light of these facts and the fact that Judge Ward is not adjudicating this case, SMDK's contention that the Eastern District of Texas already is "familiar with the prior art that the Moving Defendants rely on" is false. (*See* SMDK Opp. at 4.)

### III.   TIME TO TRIAL IS NOT A FACTOR.

SMDK argues that a court congestion factor argues against transfer because, on average, cases go to trial earlier in this District than in the NDCA. (SMDK Opp. at 11-12.) This argument ignores the realities of this case. Judge Ward recused himself shortly after Defendants filed this motion. Given this Court's heavy docket, and the existing schedules of the parties and their counsel, it appears likely that this Court will not be able to try this case until March 2012. (See Docket No. 164.) Consequently, a transfer to the NDCA might result in an earlier, rather than later, trial date for this case. Furthermore, the Federal Circuit in *Genentech* stated that considerations relating to the timing of trial are the "most speculative" and advised that in situations, like this one, where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all those other factors." *Genentech*, 566 F.3d at 1347.

### CONCLUSION

Based on an analysis of the standards articulated in *Genentech*, the NDCA is a "clearly more convenient" forum for this lawsuit. Accordingly, Defendants respectfully request that this Court grant their motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

DATED: November 19, 2009.                    Respectfully Submitted,

/s/ Tom Henson
Tom Henson
Lead Attorney
TX State Bar No. 09494000
**RAMEY & FLOCK, P.C.**

- 5 -

                100 East Ferguson, Suite 500
                Tyler, TX 75702
                Tel.: (903) 597-3301
                Fax: (903) 597-2413
                thenson@rameyflock.com

*Of Counsel:*
Richard de Bodo
Lawrence McClure
Patrick Park
HOGAN & HARTSON, LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel.: (310) 785-4600
Fax: (310) 785-4601
rdebodo@hhlaw.com
ljmcclure@hhlaw.com
ppark@hhlaw.com

*Attorneys for SEIKO EPSON CORPORATION and EPSON AMERICA, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                /s/ Tom Henson
                Tom Henson